**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
AMI BAR-MASHIAH and MIRA BAR-MASHIAH,

Plaintiffs,

**MEMORANDUM**
**AND ORDER**

-against-

CV 18-4633 (AKT)

THE INCORPORATED VILLAGE OF HEWLETT
BAY PARK, JAY LEVY, JOEL SCHNEIDER, and
GAIL RUBEL, in their official capacities as Trustees
of the Incorporated Village of Hewlett Bay Park, and
STEVEN CHERON,

Defendants.
-------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I. <u>PRELIMINARY STATEMENT</u>

Ami Bar-Mashiah and Mira Bar-Mashiah ("Plaintiffs") bring this suit against the

Incorporated Village of Hewlett Bay Park ("the Village"), Village Trustees Jay Levy, Joel

Schneider, and Gail Rubel in their official capacities ("the Trustees"), and Steven Cheron[1]

(collectively, "Defendants"), for alleged violation of Plaintiffs' constitutional rights arising from

a land-use dispute. *See generally* Plaintiffs' Complaint ("Compl.") [DE 1]. Specifically,

Plaintiffs claim their constitutional rights were violated when the Village granted Plaintiffs'

neighbor relief from the Village zoning code over Plaintiffs' objections – relief which allowed

their neighbor to erect a structure on her property. *See id.* Based upon the Village's action, the

---

[1] It is not clear from the Complaint who Steven Cheron is; although he appears to be the
Village Building Inspector, the Complaint contains no reference to this individual aside from the
caption.

Plaintiffs assert causes of action for (1) deprivation of their Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983, and (2) deprivation of their Fourteenth Amendment equal protection rights, also pursuant to 42 U.S.C. § 1983. *See id.*

Before the Court presently are (1) Defendants' motion to dismiss the Complaint in its entirety, *see generally* Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.' Mem. I") [DE 15], and (2) Defendants' motion for sanctions, including attorneys' fees and costs, for the filing of what Defendants claim is an untimely and ultimately frivolous lawsuit. *See generally* Defendants' Memorandum in Support of their Motion for Sanctions ("Defs.' Mem. II") [DE 16]; Defendants' Memorandum in Reply in Further Support of Both Motions ("Defs.' Reply") [DE 24]. Plaintiffs oppose both motions. With respect to the motion to dismiss, Plaintiffs argue primarily that this litigation was timely commenced. *See generally* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n. I") [DE 21]. As to the motion for sanctions, Plaintiffs maintain that the purpose of the motion is to intimidate and coerce Plaintiffs into withdrawing their Complaint. *See generally* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Sanctions ("Pls.' Opp'n. II") [DE 23]. For the reasons set forth below,[2] Defendants' motion to dismiss the Complaint is GRANTED, and the Complaint is dismissed with prejudice. Defendants' motion for sanctions is GRANTED in part, to the extent set forth in this Memorandum and Order.

---

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* DE 12.

## II.   DEFENDANTS' MOTION TO DISMISS

### A.   Factual and Procedural Background

#### 1.   *Facts Alleged in the Complaint*

The Court takes the following facts from Plaintiffs' Complaint and accepts Plaintiffs' factual allegations as true for purposes of the motion to dismiss. *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013). Although Plaintiffs' claims arise from the issuance of a building permit to their neighbor, the Complaint sets forth few facts regarding the chronology of the permitting and zoning relief process as it relates to the permit(s) in question. Those facts which are pleaded are often contradictory and obfuscate any timeline of relevant events. Notwithstanding the confusing nature of the chronology set forth, the factual allegations in the Complaint – excluding recitations of various legal provisions and conclusory and argumentative assertions – can be distilled as follows.

Plaintiffs are residents of the Incorporated Village of Hewlett Bay Park in Nassau County, New York, and own property located at 222 Meadow View Avenue. Compl. ¶¶ 1, 8. The neighboring property located at 116 Cedar Avenue, Hewlett, New York is owned by Karen Katz ("Katz"). *Id.* ¶ 9. Plaintiffs state that on or about September 22, 2014, Katz was issued a building permit by the Village to perform significant construction work at her property.[3] *Id.* ¶¶ 9-10. The Complaint asserts that this work, which at the time of the filing of the Complaint had presumably been completed, "caused a substantial reduction in value of the plaintiff's

---

[3] The Complaint states that this was permit No. 3733; however, copies of the relevant permits as submitted with Defendants' motion to dismiss show that permit No. 3733 was issued on December 12, 2013 – a date not referenced anywhere in the Complaint. *See* Declaration of Mark A. Radi, Esq. in Support of Defendants' Motion to Dismiss ("Radi Decl. I") [DE 19], Exhibit B. The date of September 22, 2014 is associated with permit No. 3763, which states that it replaces permit No. 3733. *See* Radi Decl. I, Exhibit D.

premises, including but not limited to potential exacerbation of rainwater and flood runoff onto the plaintiff's premises." *Id.* ¶ 11; *see id.* ¶¶ 16, 34. Confusingly, Plaintiffs aver that "[s]ubsequent to the issuance of the aforesaid building permit, and without the knowledge, permission or consent of the plaintiffs, and without conducting the required public hearings, on or about February 24, 2015, the defendants, its agents and/or employees approved the permit filed on behalf of the Neighboring Premises." *Id.* ¶ 15. Despite alleging that the permit work was "approved" "*without* conducting the required public hearings," Plaintiffs also assert that "[t]he work stated in the aforesaid building permit was initially approved by the Board of Trustees of the Village, and upon information and belief, as a result of public meetings held before the Board of Trustees, on or about February 24, 2015." *Id.* ¶ 12 (emphasis added). Plaintiffs state that subsequently, "the permit was extended to December 11, 2015." *Id.* Notwithstanding the contradictory assertions with respect to whether a public hearing was held on the permit work for Katz's property, Plaintiffs claim that *they* were not provided an opportunity to be heard on February 24, 2015. Specifically, the Complaint states, "[u]pon information and belief, the Board of Trustees unanimously approved the permit without providing the plaintiffs with notice and with an opportunity to be heard at the aforesaid public meetings." *Id.* ¶ 13; *see id.* ¶¶ 32-33.

On these facts, Plaintiffs assert Section 1983 claims for violation of their Fourteenth Amendment due process and equal protection rights.[4] *See* Compl. ¶¶ 35-39.

_____

[4] Paragraph 7 of the Complaint states as follows: "[t]his is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 USC, sections 1983, 1988, the Fifth and Fourteenth Amendments to the United States Constitution." Compl. ¶ 7. No further reference to "section[ ] . . . 1988" or the Fifth Amendment is made in the Complaint. Because Plaintiffs are not "prevailing part[ies]" in this action pursuant to 42 U.S.C. § 1988(b), and

### 2. *Procedural History*

Plaintiffs filed their Complaint on August 16, 2018. *See* DE 1. On September 20, 2018, Defendants filed a letter to Judge Hurley requesting a pre-motion conference for the purpose of moving to dismiss the Complaint. *See* DE 6. Judge Hurley waived his pre-motion conference requirement and set a briefing schedule for the motion. *See* Electronic Order of October 5, 2018. Counsel for the parties appeared before this Court for the Initial Conference on November 5, 2018, at which time a limited discovery schedule was set in place in light of the pending motion to dismiss. *See* DE 11. Several days later, counsel filed a "Consent" form in which they formally consented to the jurisdiction of a magistrate judge for all purposes. *See* DE 12. Judge Hurley "so ordered" the Consent shortly thereafter. *See* Electronic Order of November 16, 2018. The fully briefed motion to dismiss and motion for sanctions were filed together on December 18, 2018. *See* DE 14-24. On November 30, 2019, the Court granted a joint motion to stay discovery pending a resolution of the motions to dismiss and for sanctions. *See* DE 25; Electronic Order of January 30, 2019.

### B. Standard and Scope of Review

Although Defendants' moving papers do not specify under which provisions of the Federal Rules of Civil Procedure they move to dismiss the Complaint, it is apparent that their arguments seek dismissal under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a viable claim.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all

---

because the federal government is not a party to this action, the Court does not address 42 U.S.C. § 1988 or the Fifth Amendment in the context of the motion to dismiss.

reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The Court therefore does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)). The standard of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are inherently similar. *Davis v. JP Morgan Chase Bank*, No. 14-CV-6263, 2016 WL 1267800, at *3 (S.D.N.Y. Mar. 30, 2016). However, "[o]n a Rule 12(b)(1) motion . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *as amended* (Apr. 16, 2003)); *Davis*, 2016 WL 1267800, at *3. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a

preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996)); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). That is to say, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Parker-Leon v. Middle Vill. Preparatory Charter Sch.*, No. 17-CV-4548N, 2019 WL 2394211, at *2 (E.D.N.Y. June 6, 2019) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

One (further) point of divergence between how a court adjudicates a motion brought pursuant to Rule 12(b)(1) and one brought pursuant to Rule 12(b)(6) involves the materials which may properly be considered. As a general matter, a court deciding a Rule 12(b)(6) motion must limit its consideration to the allegations in the plaintiff's complaint, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). A court may also consider matters of which judicial notice may be taken.[5] *Romero v. Bestcare Inc.*, No. 15-CV-7397, 2017 WL 1180518, at *3 (E.D.N.Y. Mar. 29, 2017); *see Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech.*,

---

[5] Outside of the limited exceptions identified here, where a party moves pursuant to Rule 12(b)(6) and "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).

*Inc.*, 742 F.3d 42, 44 (2d Cir. 2014) ("[O]n a motion to dismiss, a court may consider . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). This includes matters of public record. *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998). Finally, "in certain circumstances 'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure.'" *Toussie v. Town Bd. of Town of E. Hampton*, No. CIV. 08-1922, 2010 WL 597469, at *3 (E.D.N.Y. Feb. 17, 2010) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

By contrast, while a court considers the allegations in the pleadings in reviewing a motion made pursuant to Rule 12(b)(1), it may in addition rely on evidence beyond the pleadings to assist its determination as to the existence of subject matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.%22a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (citing *Makarova*, 201 F.3d at 113).

In light of the fact that both Plaintiffs and Defendants have submitted declarations in support of their respective positions – annexed to which are exhibits containing documents not attached to or explicitly referenced in the Complaint – understanding what may properly be considered in resolving Defendants' motion to dismiss is important. Upon review of the documents submitted with the parties' motion papers, the Court does not find conversion to a Rule 56 motion to be necessary. Rather, as discussed below, the Court chooses not to consider the majority of extraneous documents submitted by counsel. Where the Court does consider

such documents, it is because they fall properly within the permissible scope of the Court's review as set forth above.

### C.       Discussion

Defendants' motion to dismiss is premised on multiple arguments: (1) Plaintiffs' claims fall outside the three-year statute of limitations governing claims brought pursuant to 42 U.S.C. § 1983, or outside the four-month statute of limitations governing claims brought pursuant to N.Y. C.P.L.R. Art. 78,[6] and are thus time barred; (2) Plaintiffs lack standing to challenge the issuance of building permits issued to Katz; (3) Plaintiffs' claims are not ripe for judicial review because Plaintiffs did not seek, and the Village did not render, a final decision on the lawfulness of Katz's building permits; (4) Plaintiffs have failed to allege sufficient causation to support their Section 1983 claims; (5) Plaintiffs lack a protectable property interest in the outcome of Katz's application for a building permit and therefore cannot state a claim for violation of either their substantive or procedural due process rights; (6) Plaintiffs have failed to state a class-of-one equal protection claim; (7) Plaintiffs have failed to allege any personal involvement of the Trustee Defendants who are additionally immune from suit; (8) Plaintiffs failed to effect service on Steven Cheron; (9) Plaintiffs fail to plead a *Monell* claim against the Village; and (10) the Village, as a government entity, is immune from punitive damages. *See generally* Defs.' Mem. I.

Defendants' arguments with respect to standing and ripeness implicate the Court's subject matter jurisdiction: if Plaintiffs lack standing to assert their claims, or if their claims are

---

[6]   Plaintiffs commenced two Article 78 proceedings with respect to Katz's building permits, one on December 19, 2014, and a second one on July 8, 2015. *See* Radi Decl. I, Exhibits G and H. In the context of Rule 12(b)(6), the Court can properly take judicial notice of these proceedings and their related filings.

not ripe for judicial review, the Court lacks subject matter jurisdiction over Plaintiffs' lawsuit. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."); *Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 225 (2d Cir. 1998) ("Ripeness is a constitutional prerequisite to exercise of jurisdiction by the federal courts."). Consequently, Rule 12(b)(1) provides the applicable standard of review with respect to whether Plaintiffs have standing and as to the ripeness of their claims.

Where, as here, a motion to dismiss requires a court to address arguments raised pursuant to both Rules 12(b)(1) and 12(b)(6), "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F. 2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1350, p. 548 (1969)); *Thompson v. Ocwen Fin. Corp.*, No. 3:16-cv-01606, 2018 WL 513720, at *2 (D. Conn. Jan. 23, 2018) (explaining that "federal courts should ordinarily resolve any doubts about the existence of federal subject matter jurisdiction prior to considering the merits of a complaint") (citing *Rhulen*, 896 F. 2d at 678); *Calverton Hills Homeowners Assn., Inc. v. Nugent Bldg. Corp*., 2:17-CV-03916, 2017 WL 6598520, at *4 (E.D.N.Y. Dec. 26, 2017) (same). The Court therefore begins its analysis by addressing whether Plaintiffs have standing to assert their claims and whether their claims are ripe for review.

### 1. *Standing and Ripeness*

#### a. **Legal Principles**

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci* ), 126 F.3d 380, 387-88 (2d Cir. 1997) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. CONST. art. III, § 2. As the Supreme Court has stated, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560 (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)). Over the years, federal jurisprudence has

> established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations and citations omitted); *Pac. Capital Bank, N.A. v. Connecticut,* 542 F.3d 341, 350 (2d Cir. 2008); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013). These three elements – (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressable by the court – are not mere pleading requirements, but rather jurisdictional prerequisites, and, as a result, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the

manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

The doctrine of "ripeness" shares a close relationship to the doctrine of "standing." "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The doctrine of ripeness thus implicates two distinct "jurisdictional criteria": (1) that part of the doctrine having its source in the Case or Controversy Clause of Article III can be characterized as "[c]onstitutional ripeness," and "hence goes, in a fundamental way, to the existence of jurisdiction"; while (2) that part of the doctrine having its source in prudential considerations is more flexible, and "constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it." *Simmonds v. INS,* 326 F.3d 351, 356-57 (2d Cir. 2003). It is constitutional ripeness which concerns the Court here.

As the Second Circuit has explained, "[o]ften, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing. . . . Constitutional ripeness, in other words, is really just about the first *Lujan* factor" – *i.e.*, whether a plaintiff's injury is both actual or imminent, as well as concrete and particularized. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). By "ensur[ing] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution[,] [t]he ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

In order to establish whether a claim is ripe in the land-use context, and specifically where a property owner challenges local government action with respect to zoning determinations, "the Court must apply the first prong of the analysis the Supreme Court articulated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)."[7] *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 416 (S.D.N.Y. 2017), *aff'd*, 742 Fed. App'x 521 (2d Cir. 2018); *see Murphy*, 402 F.3d at 347-49 (noting that the second prong of *Williamson County* applies only to takings claims based on land use because that prong addresses whether plaintiffs have received just compensation). The first prong of the *Williamson County* analysis requires a court to determine whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."[8] *Williamson County*, 473 U.S. at 186. This "final-decision requirement helps

---

[7] "Determining whether a case is ripe generally requires [the Court] to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). However, this analytical framework does not apply to land-use disputes. *See Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 597.

[8] In a recent decision, *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), the Supreme Court overturned *Williamson County*'s state exhaustion requirement for takings claims. The Court explicitly did not, however, overturn the "finality" requirement of *Williamson County*:

> In *Williamson County*, a property developer brought a takings claim under § 1983 against a zoning board that had rejected the developer's proposal for a new subdivision. *Williamson County* held that the developer's Fifth Amendment claim was not "ripe" for two reasons. First, the developer still had an opportunity to seek a variance from the appeals board, so any taking was therefore not yet final. 473 U.S. at 186–194, 105 S.Ct. 3108. Knick does not question the validity of this finality requirement, which is not at issue here.

distinguish between those cases in which a plaintiff has suffered a 'concrete and particularized,' 'actual or imminent' injury, and those in which the injury is 'merely speculative and may never occur, depending on the final administrative resolution.'" *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014) (quoting *Dougherty,* 282 F.3d at 90). "In other words, a non-final decision on how a parcel of land may be used does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III." *Sunrise Detox V, LLC*, 769 F.3d at 122. The "final-decision" requirement moreover honors principles of federalism – "namely, that land use disputes are uniquely matters of local concern." *Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016).

"To satisfy the 'final decision' prong of the ripeness inquiry, a plaintiff must demonstrate that it has obtained a 'final, definitive position as to the application of the relevant zoning laws to the property from the municipal entity responsible for those laws.'" *Rehab. Support Servs., Inc. v. Town of Colonie*, No. 15-CV-589, 2018 WL 1415199, at *3 (N.D.N.Y. Mar. 20, 2018) (quoting *Congregation Rabbinical Coll.*, 915 F. Supp. 2d at 597); *see Sunrise Detox V, LLC*, F.3d at 121 ("Because [r]ipeness is a jurisdictional inquiry, landowners bringing zoning challenges must meet the high burden of proving that we can look to a final, definitive position from a local authority to assess precisely how they can use their property before this Court may entertain their claims.") (internal quotations omitted). "That is to say, [a] plaintiff cannot seek federal court review of a zoning ordinance or provision until it has submitted at least one meaningful application for a variance from the restrictions of the land-use laws." *Islamic Cmty. Ctr. for Mid Westchester*, 258 F. Supp. at 416 (internal quotation marks omitted).

---

*Knick*, 139 S. Ct. at 2169.

A well-recognized exception to this rule exists where obtaining a final decision on the relief sought would be futile. "[T]o invoke the futility exception, a plaintiff must demonstrate: (1) 'that [it] has filed at least one meaningful application,' and (2) 'the inevitability of refusal of the [ ] application, taking into consideration factors such as the defendants' hostility, delay and obstruction.'" *Congregation Rabbinical Coll.*, 915 F. Supp. 2d at 601 (quoting *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 Fed. App'x 350 (2d Cir. 2011)).

Finally, the Court observes that the first-prong-only test applies to, *inter alia*, land use challenges brought under the United States Constitution – the premise of Plaintiffs' challenge here. *Islamic Cmty. Ctr. for Mid Westchester*, 258 F. Supp. at 416; *Sunrise Detox V, LLC*, 769 F.3d at 122; *Lang v. Town of Tusten, NY*, No. 14 CV 4136 VB, 2015 WL 5460110, at *5 (S.D.N.Y. Aug. 6, 2015) ("The finality requirement of *Williamson's* ripeness test does apply to claims alleging equal protection violations arising from local zoning disputes."); *Congregation Rabbinical Coll. of Tartikov, Inc.*, 915 F. Supp. 2d at 597-98 (collecting cases).

### b.  Application to the Facts

As an initial matter, the Plaintiffs do not plead that they ever sought a determination from the Village's Zoning Board of Appeals to contest the issuance of the building permits to Katz. *See generally* Compl.  Plaintiffs' memorandum in opposition also fails to address whether Plaintiffs sought relief from the Zoning Board of Appeals – despite the Defendants' assertion that no such relief was ever sought. *See generally* Pls.' Opp'n. I; *see* Defs.' Mem. I at 9-10.

Both New York state and local law make clear that the Village of Hewlett Bay Park Zoning Board of Appeals is the appropriate entity from which a "final determination" regarding

the applicability of a zoning provision must be sought.  New York Village Law § 7-712-b

provides that a village zoning board of appeals

> may reverse or affirm, wholly or partly, or may modify the order,
> requirement, decision, interpretation or determination appealed
> from and shall make such order, requirement, decision,
> interpretation or determination as in its opinion ought to have been
> made in the matter by the administrative official charged with the
> enforcement of such local law and to that end shall have all the
> powers of the administrative official from whose order, requirement,
> decision, interpretation or determination the appeal is taken.

N.Y. VILLAGE Law § 7-712-b.  Chapter 146, § 33 of the Village of Hewlett Bay Park Code in

turn provides that

> [t]he Board of Appeals shall have such duties and powers as are
> specifically granted by law and in other sections of this chapter, and,
> in addition, when there are practical difficulties or unnecessary
> hardships in the way of carrying out the strict letter of this chapter,
> the Board of Appeals shall have power in passing upon appeals, in
> specific cases and after public notice and hearing, to vary or modify
> the application of any of the provisions or regulations of this chapter
> so that the spirit of this chapter shall be observed, public safety,
> health and welfare secured and substantial justice done.

VILLAGE CODE, Art. VIII, 146-33.  The Court assumes Plaintiffs' familiarity with the Village

Code as it relates to zoning; indeed, the Complaint quotes from and references Chapter 146

extensively.  *See, e.g.*, Compl. ¶¶ 22-25.

Plaintiffs' failure to affirmatively plead or otherwise present evidence that they sought a

"final decision" from the agency responsible for administering the Village zoning code – namely,

the Village Zoning Board of Appeals – necessarily prevents them from being able to satisfy their

burden with respect to subject matter jurisdiction.  Without a final determination from the

Zoning Board of Appeals, Plaintiffs' challenge to the zoning relief granted by issuance of the

Katz permits is not ripe for judicial review under the first prong of the *Williamson County*

analysis.  *See Islamic Cmty. Ctr. for Mid Westchester*, 258 F. Supp. 3d at 416.  The consequence

of failing to satisfy constitutional ripeness is that Plaintiffs lack standing to assert their claims. *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688; *Dougherty*, 282 F.3d at 90. Put another way, the relief granted by the Village Trustees in the form of the Katz permits is, without an appeal to the Zoning Board of Appeals, "a non-final decision on how a parcel of land may be used [which] does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III." *Sunrise Detox V, LLC*, 769 F.3d at 122.

As previously observed, "[t]he court 'must presume that [it] cannot entertain [a plaintiff's] claims 'unless the contrary appears affirmatively from the record.'" *Ctr. for Discovery, Inc. v. D.P.*, No. 16-CV-3936, 2018 WL 1583971, at *16 (E.D.N.Y. Mar. 31, 2018) (quoting *Kowalczyk v. Barbarite*, 594 Fed. App'x 690, 691 (2d Cir. Nov. 7, 2014)); *Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). Consequently, the absence of any reference in Plaintiffs' pleadings to an appeal to the Zoning Board of Appeals, along with the absence of evidence of such an appeal in the limited record before the Court, is fatal to Plaintiffs' ability to show ripeness, and, ultimately, the existence of subject matter jurisdiction.

However, were there any doubt about whether Plaintiffs did or did not actually appeal the issuance of the Katz permits, the Court finds affirmative evidence that they did not do so in the record. This evidence exists in a statement made by Plaintiffs in a filing related to one of two N.Y. C.P.L.R. Article 78 proceedings they previously initiated in connection with the Katz permits. The Village moved to dismiss one of these Article 78 proceeding on the grounds that, *inter alia*, Plaintiffs failed to exhaust administrative remedies by failing to appeal the issuance of the permits to the Village's Zoning Board of Appeals. In response to the Village's motion, Plaintiffs stated as follows:

> The Trustee's discretionary decision, without any supporting facts
> or factual reports from either the Building Inspector or the Village
> Engineer, is arbitrary and an abuse as a matter of law. As the Board
> of Zoning Appeals has no jurisdiction over the discretionary
> decisions of the Board of Trustees, there has been no failure to
> exhaust administrative remedies.

Radi Decl. I, Exhibit J at 6; *see id*. at 4. In the context of the Village's argument here (namely,

Plaintiffs' failure to seek review by the Zoning Board of Appeals warrants dismissal of the

Article 78 petition), the Court construes Plaintiffs' contention that the Zoning Board of Appeals

lacked jurisdiction over the Village conduct with respect to the Katz permits to be a clear attempt

to justify or excuse their failure seek appellate review. Therefore, in this filing[9] the Court finds a

constructive admission by Plaintiffs that they did not appeal the Village's issuance of the Katz

permits to the Village Zoning Board of Appeals. This admission comports with the silence of

Plaintiffs' pleadings on this issue and the absence of any record evidence to the contrary.

Under New York Village Law § 7-712-a5(b), "[a]n appeal [to the Zoning Board of

Appeals] shall be taken within sixty days after the filing of any order, requirement, decision,

interpretation or determination of the administrative official, by filing with such administrative

official and with the board of appeals a notice of appeal, specifying the grounds thereof and the

relief sought." It is indisputable that the time period within which Plaintiffs were able to seek

redress from the Village Zoning Board of Appeals with respect to the Katz permits has long

since passed. Because Plaintiffs have not sought a final determination from the Village Zoning

Board of Appeals with respect to the Katz permits, no claim premised on those permits is or can

be ripe for judicial review. *See Riverhead Park Corp. v. Cardinale*, No. 07-CV-4133, 2013 WL

---

[9] The Court may consider this evidence within the appropriate scope of Rule 12(b)(1)
review. *See Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.%22a.r.l*, 790 F.3d
411, 417 (2d Cir. 2015).

1335600, at *9 (E.D.N.Y. Mar. 28, 2013) (finding that where plaintiffs did not appeal town action to the board of appeals and time to do so had since lapsed, "the [c]ourt dismissal is with prejudice, because . . . the [p]laintiffs' challenge will never be ripe for review"); *see also Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002) ("[A] claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open."). Consequently, Plaintiffs are and will continue to be unable to establish subject matter jurisdiction with respect to any claims premised on these permits.

### 2.    *Failure to State a Claim*

Even assuming that Plaintiffs' claims were ripe for review and the Court had subject matter jurisdiction over them accordingly, they are not viable claims and dismissal under Rule 12(b)(6) would be warranted for several distinct reasons.

### a.    **Due Process**

First and foremost, Plaintiffs do not have a protectable property interest with respect to either their neighbor's property or the Katz permits, and they are unable to assert a procedural due process claim in connection with either interest accordingly. In *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, (2d Cir. 1994), the Second Circuit addressed claims bought by plaintiffs who argued they had a property interest in the proper enforcement of a local zoning code with regard to their neighbors' property. "Assuming without deciding that a property owner ever could have a protected interest in the enforcement of the zoning laws against an adjoining property," the Second Circuit found that "no such right has been created." *Id*. at 192. The Second Circuit's conclusion rested on (1) the fact that local regulators have wide discretion in applying local regulations, like zoning codes, and (2) the "well settled" principle that "a

constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Id*. (citing *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir. 1989), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989)). The logic of the decision in *Gagliardi* is clear: where municipalities have wide discretion in granting zoning relief, it follows that no *entitlement* to that relief exists, and, absent an entitlement, there is no protectable property interest upon which a landowner can base a procedural due process claim – *i.e*., a claim that she was deprived of property without due process of law.

"In the wake of *Gagliardi,* the lower courts have found that there is no due process right to rigorous enforcement of land-use laws." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 704 (S.D.N.Y. 2011) (citing *Nemeth v. Vill. of Hancock,* No. 10-CV-1161, 2011 WL 56063, at *4 (N.D.N.Y. Jan. 7, 2011)). Framing the issue slightly differently, "[w]here a plaintiff's sole theory in support of a due process challenge or a claim pursuant to 42 U.S.C. § 1983 is that 'they have a constitutionally protected interest in *preventing* municipal authorities from granting another property owner a certain use of his property under the land use regulations,' plaintiff's claims will be dismissed as a matter of law." *Konrad v. Epley*, No. 12-CV-4021, 2013 WL 6200009, at *19 (E.D.N.Y. Nov. 25, 2013) (emphasis in original) (quoting *Schubert*, 775 F. Supp. 2d at 707), *aff'd*, 586 Fed. App'x 72 (2d Cir. 2014)); *see Gagliardi*, 18 F.3d at 192 (holding that plaintiffs had "no right to demand that [municipal officials] enforce" land use restrictions against plaintiff's neighbors, even where the neighbors' properties are not in compliance with prevailing zoning laws or other land use regulations). Because Plaintiffs cannot claim a property interest in how their neighbor's property is used – specifically, in preventing the construction of

a structure on the neighbor's property – Plaintiffs are unable to claim that they were deprived of property without due process of law. Their procedural due process claim, then, is not viable.

There is a second, related reason why Plaintiffs cannot claim a property interest with respect to Katz's property and the Katz permits: "[a] person cannot claim a constitutionally protected property interest in uses of neighboring property on the ground that those uses may affect the market value of [plaintiff's] property." *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 238-39 (E.D.N.Y. 2009) (quoting *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir. 1990)); *see Fusco v. State of Connecticut,* 815 F.2d 201, 205-06 (2d Cir. 1987) (observing that "governmental action causing a decline in property values has never been held to 'deprive' a person of property within the meaning of the Fourteenth Amendment"). This is precisely what Plaintiffs are arguing here. Plaintiffs complain that the work performed pursuant to the Katz permits "caused a substantial reduction in value of the plaintiff's premises, including but not limited to potential exacerbation of rainwater and flood runoff onto the plaintiff's premises." Comp. ¶ 11. Because a decline in property value does not "deprive" Plaintiffs of any property interest, their procedural due process claim is rendered not viable on this additional basis.[10]

_____

[10] To the extent Plaintiffs attempt to assert a substantive due process claim, such a claim must also fail. "Government conduct may be actionable under section 1983 as a substantive due process violation if it 'shocks the conscience.'" *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952)); *Lombardi v. Whitman,* 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."). There is nothing in the Complaint which indicates that any Village conduct "shocks the conscience" or is "offensive to human dignity."

### b. Equal Protection

According to Plaintiffs, the issuance of the Katz permits and the subsequent construction on their neighbor's property violates their equal protection rights. Such a claim cannot succeed. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [courts] have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Plaintiffs have not alleged that they are a member of a protected class. In the absence of such an allegation, there are two types of claims available under the Equal Protection Clause of the Fourteenth Amendment: (1) "class-of-one" claims and (2) "selective enforcement" claims. *DePrima v. City of New York Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014); *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 Fed. App'x 32, 34 (2d Cir. 2014).

To survive a motion to dismiss, a plaintiff pleading a "class-of-one" equal protection claim must plausibly allege that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (citing *Ruston v. Town Bd. for Skaneateles,* 610 F.3d 55, 60 (2d Cir. 2010)). The Second Circuit has held "that a class-of-one claim requires a plaintiff to show an extremely high degree of

similarity between itself and its comparators." *Feiner*, 694 F.3d at 222 (citing *Ruston*, 610 F.3d at 60). For pleading purposes, this is the functional equivalent of alleging that a plaintiff and its comparator are "*prima facie* identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). Similarly, in order to successfully plead a selective enforcement claim, a plaintiff must plausibly allege that "(1) compared with others similarly situated, [he or she] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir. 1992)).

Here, Plaintiffs have not asserted any facts or information as to any other similarly situated property owners. The closest the Complaint comes is the conclusory assertion that the Village's "failure to provide the plaintiffs with the opportunity to be heard" deprived them of their equal protection rights – the inference here being that unidentified others were given an opportunity to be heard. Compl. ¶ 33; *see id.* ¶¶ 13, 37, 42. Because the Complaint is silent as to potential comparators who are similarly situated – or any comparators whatsoever for that matter – Plaintiffs have not stated either a "class-of-one" or "selective enforcement" equal protection claim.[11]

---

[11]    Additionally, "[z]oning law enforcement is a 'classic example' of discretionary behavior that does not give rise to a 'class of one' claim." *Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL 2679935, at *5 (E.D.N.Y. June 30, 2010) (quoting *Catcove Corp. v. Heaney,* 685 F. Supp. 2d 328, 332 (E.D.N.Y. 2010)).

c.        **Timeliness**

Both Plaintiffs' due process and equal protection claims are not viable for yet another reason:  they were brought beyond the applicable statute of limitations.  Plaintiffs' constitutional claims are brought pursuant to 42 U.S.C. § 1983, which imposes liability on, and creates a right of action against, anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  Section 1983 claims brought in New York are subject to New York's three-year statute of limitations for general personal injury actions.  *Owens v. Okure,* 488 U.S. 235, 251 (1989); *Cloverleaf Realty of New York, Inc. v. Town of Wawayanda*, 572 F.3d 93, 94 (2d Cir. 2009).  Because Plaintiffs filed the Complaint in this action on August 16, 2018, they may recover only for those claims that accrued on or after August 16, 2015.  The Court must therefore determine the point at which Plaintiffs' claims accrued.

"An action accrues when the plaintiffs know, or ha[d] reason to know, of the injury that is the basis of the action."  *Deepwells Estates Inc. v. Inc. Vill. of Head of Harbor*, 973 F. Supp. 338, 345 (E.D.N.Y. 1997) (citing *Barrett v. United States,* 689 F.2d 324, 333 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131 (1983)).  Notwithstanding the tortured chronology of the Katz permits as presented in Plaintiffs' Complaint, the Court finds that Plaintiffs were well aware of the alleged injury purportedly created by the Village's issuance of the Katz permits – and their claims therefore accrued – prior to August 16, 2015.  In reaching this conclusion, the Court takes judicial notice of the fact that Plaintiffs filed two proceedings in New York State Supreme Court pursuant to N.Y. C.P.L.R. Article 78 to challenge the Katz permits, one in December 2014, and the second in June 2015.  *See* Radi Decl. I, Exhibits G and H.  Plaintiffs therefore had to have been aware of the alleged injury created by the Katz permits at least as of December 2014, when

they first sought a judicial remedy via Article 78 with respect to the first permit. Significantly, according to the Complaint, this was a mere three months after the first permit was issued by the Village on September 22, 2014. *See* Compl. ¶¶ 9-10; *see also Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994) ("[T]he proper focus is on the time of the [alleged unlawful] act, not the point at which the consequences of the act become[ ] painful.").

Plaintiffs' argument that the "continuing violation doctrine" tolls the statute of limitations is misplaced. *See* Pls.' Opp'n. I at 4. Under the continuing violations doctrine, a claim challenging a continuous practice or policy of discrimination may not accrue until the last discriminatory act in furtherance of the policy. *Kwas v. Intergraph Gov't Sols.*, No. 15-CV-5897, 2016 WL 4502039, at *2 (E.D.N.Y. Aug. 24, 2016); *Fahs Construction Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013). "The continuing violation doctrine is applicable in limited contexts, including Title VII discrimination and retaliation claims, Eighth Amendment claims of medical indifference brought under Section 1983, and Eighth Amendment claims for cruel and unusual punishment against federal officials brought under *Bivens.*" *Kwas*, 2016 WL 4502039, at *2; *MacFarlane v. Ewald,* No. 10-CV-2877, 2016 WL 4076585, at *3 (E.D.N.Y. Aug. 1, 2016) (collecting cases)).

Apart from the fact that the Court is unaware of any authority applying the continuing violation doctrine to land-use disputes like this one, "[b]ecause all plaintiffs in this case knew or should have known of their claims at the time the [permits] were approved, there is no justification for the application of the continuing violation theory." *Blankman v. Cty. of Nassau*, 819 F. Supp. 198, 208 (E.D.N.Y. 1993) (citing *Local 144 v. C.N.H. Management Assoc., Inc.,* 741 F. Supp. 415, 422 (S.D.N.Y. 1990)), *aff'd*, 14 F.3d 592 (2d Cir. 1993); *see Ruane v. Cty. of Suffolk*, 923 F. Supp. 2d 454, 459-60 (E.D.N.Y. 2013) (finding the continuing violation doctrine

inapplicable to render timely a vehicle owner's otherwise time-barred Section 1983 claim that the county violated her due process rights when seizing her vehicle in connection with a DWI arrest).

### D.    Defendants' Motion to Dismiss:  Conclusion

For the reasons discussed above, Plaintiffs' claims are not ripe for adjudication, and, as a result, the Court lacks subject matter jurisdiction over them.  Moreover, Plaintiffs' claims are not legally viable for the reasons stated above.  Even if the Court had subject matter jurisdiction over Plaintiffs' claims, Rule 12(b)(6) would require their dismissal.  The Court therefore need not address Defendants' multiple other arguments in support of dismissal.  Defendants' motion to dismiss is GRANTED, and Plaintiffs' Complaint is DISMISSED, with prejudice.

## III.    DEFENDANTS' MOTION FOR SANCTIONS

Defendants seek sanctions and attorneys' fees from Plaintiffs under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, 42 U.S.C. § 1988, and the Court's inherent authority for what they claim is a blatantly frivolous action.  *See generally* Defs.' Mem. II.  Plaintiffs on the other hand contend that the motion for sanctions is nothing but an attempt to coerce Plaintiffs into withdrawing their Complaint.

### A.    Legal Principles

#### 1.    *Rule 11*

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of his knowledge, information, and belief formed after a reasonable inquiry, the filing is:  (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law or for establishing new law"; and (3) either

supported by evidence or "will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery." FED. R. CIV. P. 11(b).

Sanctions under Rule 11 can be awarded following either a motion on notice, *see* FED. R.

CIV. P. 11(c)(2), or upon a *sua sponte* determination of the court. *See* FED. R. CIV. P. 11(c)(3).

When a motion is made on notice, "[t]he standard for triggering the award of fees under Rule 11

is objective unreasonableness," *Margo v. Weiss,* 213 F.3d 55, 65 (2d Cir. 2000), as opposed to

"bad faith." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). In the Second

Circuit, an action is "objectively unreasonable" such that "Rule 11 sanctions are appropriate

where an attorney or party declines to withdraw a claim 'upon an express request by his or her

adversary after learning that [the claim] was groundless.'" *Fuerst v. Fuerst*, 832 F. Supp. 2d

210, 220 (E.D.N.Y. 2011) (quoting *Carlton Grp., Ltd. v. Tobin*, No. 02 CIV. 5065, 2003 WL

21782650, at *6 (S.D.N.Y. July 31, 2003); *Calloway v. Marvel Entm't Grp., a Div. of Cadence

Indus. Corp.*, 854 F.2d 1452, 1472 (2d Cir. 1988) ("An attorney cannot be sanctioned [ ] for

failing to withdraw a claim that later proves to be groundless, provided that the attorney[ ] . . .

did not decline to withdraw it upon an express request by his or her adversary after learning that

it was groundless."), *rev'd in part sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S.

120 (1989); *see O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 709 (2d Cir. 1990)

("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further

supports the imposition of a rule 11 sanction."). However, the notice of a groundless claim and a

request for its withdrawal must come at least 21 days prior to a moving party's filing of a

Rule 11 motion with the court. This is due to Rule 11's "safe harbor" provision, which

necessitates a 21-day period following service of a Rule 11 motion on an opposing party and filing with the Court.  *See* FED. R. CIV. P. 11(c)(2).

### 2.    *28 U.S.C. § 1927*

Under 28 U.S.C. § 1927, any attorney in a federal court who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "Bad faith is the touchstone of an award under this statute."  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)  Accordingly, the Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Id.* (citation omitted); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a 'clear showing of bad faith.'") (citation omitted); *Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982) ("To justify the imposition of excess costs of litigation upon an attorney [under § 1927] his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.  The section is directed against attorneys who willfully abuse judicial processes.").

### 3.    *The Court's Inherent Authority*

Similarly, under the exercise of a court's inherent power to supervise and control its own proceedings, the bad-faith exception to the "American Rule" – that litigants generally bear their own litigation expenses – allows a court to award attorneys' fees where there is "both 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes,' and 'a high degree of specificity in the

factual findings of [the] lower courts.'"  *Oliveri*, 803 F.2d at 1272 (quoting *Dow Chemical*

*Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir. 1986)).  The standard a court

uses in determining whether to impose sanctions under its inherent authority is substantively

similar to the standard a court uses in determining whether to impose sanctions under § 1927.

*See Oliveri*, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be

supported by a finding of bad faith similar to that necessary to invoke the court's inherent

powers.") (citation omitted).

### 4.    *42 U.S.C. § 1988*

Pursuant to 42 U.S.C. § 1988(b), a court may, in its discretion, award attorneys' fees to

the "prevailing party" in an action brought under 42 U.S.C. § 1983.  "Section 1988 makes the

prevailing *party* eligible for a discretionary award of attorney's fees."  *Venegas v. Mitchell*, 495

U.S. 82, 87 (1990) (emphasis in original) (citing *Evans v. Jeff D.,* 475 U.S. 717, 730 (1986)).

"Because it is the party, rather than the lawyer, who is so eligible, [the Supreme Court has]

consistently maintained that fees may be awarded under § 1988 even to those plaintiffs who did

not need them to maintain their litigation, either because they were fortunate enough to be able to

retain counsel on a fee-paying basis, or because they were represented free of charge by

nonprofit legal aid organizations."  *Venegas*, 495 U.S. at 88 (citing *Blanchard v. Bergeron*, 489

U.S. 87, 94-95 (1989) and *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984)).

Section 1988 aims to facilitate civil rights plaintiffs obtaining competent legal

representation, although "§ 1988 also authorizes a fee award to a prevailing defendant, but under

a different standard reflecting the 'quite different equitable considerations' at stake."  *Fox v.*

*Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. Equal Employment*

*Opportunity Comm'n*, 434 U.S. 412, 419 (1978)).  That is, "§ 1988 authorizes a district court to

award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Fox*, 563 U.S. at 833 (quoting *Christiansburg Garment Co.*, 434 U.S. at 421); *Nardoni v. City of New York*, No. 17 CIV. 2695, 2019 WL 542349, at *7 (S.D.N.Y. Feb. 12, 2019) ("While the United States Supreme Court has interpreted Section 1988(b) as a proper measure of relief for a prevailing party plaintiff, it has discouraged the awarding of attorney fees and costs where the defendant is the prevailing party.") (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)), *report and recommendation adopted*, No. 1:17-CV-2695, 2019 WL 952333 (S.D.N.Y. Feb. 27, 2019).

### B.  Application to the Facts

As an initial matter, the Court does not find the existence of "bad faith" here sufficient to warrant sanctions under either Section 1927 or the Court's inherent authority.  "While it is true that bad faith can be inferred when a plaintiff's claims are entirely baseless, *see Altvater Gessler–J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.,* No. 06 Civ. 6510, 2011 WL 2893087, at *5 (S.D.N.Y. July 14, 2011) (collecting cases), 'the mere fact that a plaintiff ultimately did not succeed in its . . . claims does not dictate an inference of bad faith.'" *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, No. 09 CIV. 6261, 2012 WL 1446922, at *2 (S.D.N.Y. Apr. 26, 2012) (quoting *Farberware Licensing Co., LLC v. Meyer Mktg. Co., Ltd.,* No. 09 Civ. 2570, 2009 WL 5173787, at *2 (S.D.N.Y. Dec. 30, 2009), *aff'd,* 428 Fed. App'x 97 (2d Cir. 2011)).  In cases where courts have found bad faith based on the lack of merit of a plaintiff's claims, "[t]he circumstances were generally such . . . that a court could draw no inference other than that the actions had been brought for improper purposes." *Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 CIV. 2570, 2009 WL 5173787, at *2 (S.D.N.Y. Dec. 30, 2009) (quoting *Multivideo Labs, Inc. v. Intel Corp.*, No. 99 CIV. 3908, 2000 WL

502866, at *2 (S.D.N.Y. Apr. 27, 2000)), *aff'd*, 428 Fed. App'x 97 (2d Cir. 2011).  Although

Plaintiffs' claims in the instant action are without merit and are dismissed accordingly, the Court

does not infer from the absence of merit an improper motive on behalf of Plaintiffs or their

counsel.

However, Plaintiffs' claims here are "objectively unreasonable" and are therefore

sufficient to warrant sanctions for violation of Rule 11(b)(2).  There was no objectively

reasonable basis to believe or argue that Plaintiffs' claims were "warranted by existing law or by

a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing

new law." FED. R. CIV. P. 11(b)(2).  "A party advances an objectively unreasonable claim if, at

the time the party signed the pleading, 'it is patently clear that [the] claim has absolutely no

chance of success under the existing precedents, and where no reasonable argument can be

advanced to extend, modify or reverse the law as it stands[.]'" *Adams v. New York State Educ.

Dep't*, No. 08 CIV.5996, 2010 WL 4970011, at *7 (S.D.N.Y. Dec. 8, 2010), *report and

recommendation adopted as modified sub nom. Adams v. New York State Dep't of Educ.*, 855 F.

Supp. 2d 205 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. New York State Educ. Dep't*, 547

Fed. App'x 9 (2d Cir. 2013); *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (explaining

that a pleading "violates Rule 11 . . . where, after reasonable inquiry, a competent attorney could

not form a reasonable belief that the pleading is well grounded in fact and is warranted by

existing law or a good faith argument for the extension, modification or reversal of existing

law").  The fact that Plaintiffs' claims are not and never will be ripe for judicial adjudication,

and, further, that they are not viable for multiple reasons, is not subject to debate.  Proper

application of well-settled and straightforward legal principles should have brought Plaintiffs'

counsel to the conclusion that these claims cannot succeed. Indeed, elementary legal research would have confirmed this conclusion.

For purposes of Rule 11, Defendants' counsel served Plaintiffs with their proposed notice of motion for sanctions on September 13, 2018. *See* Declaration of Mark A. Radi, Esq. in Support of Defendants' Motion for Sanctions ("Radi Decl. II") [DE 17], Exhibit B. This notice is accompanied by a letter explaining the basis for Defendants' motion for sanctions – that the action is time-barred, that Plaintiffs never appealed the Katz permits to the Zoning Board of Appeals, and that there is no federally protected property interest in the use of their neighbor's property, among others. As such, Defendants' notice is sufficient to satisfy the "safe harbor" provision of Rule 11(c)(2). *See id.*; *see also* FED. R. CIV. P. 11(c)(2); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012) ("We hold, in the circumstances here, that Koon Chun met the procedural requirements of the safe harbor provision of Rule 11(c)(2) by serving its notice of motion for Rule 11 sanctions with its January 9, 2008, letter, even though it did not serve at that time supporting affidavits or a memorandum of law.").

In the absence of a finding of bad faith, the Court is left to assume that the lack of merit of this litigation stems from a failure to exercise due diligence as to vetting the facts as well as the substantive law which applies to the purported claims asserted here. Significantly, aside from conclusory assertions that Defendants' motion for sanctions constitutes "reckless advocacy" and "depraved methods," Pls.' Opp'n. II. at 1, Plaintiffs' counsel has made no meaningful attempt to explain why or how Plaintiffs' claims have merit or foundation in existing law. Rather, counsel simply states in conclusory fashion that Plaintiffs have a constitutionally protected property interest and that their claims are not untimely – without

providing any colorable legal support for either contention – notwithstanding the clear weight of legal authority to the contrary.  As a result, the Court finds the imposition of sanctions for violation of Federal Rule of Civil Procedure 11(b)(2) is warranted here.  For essentially the same reasons, the Court finds Plaintiffs' claims sufficient to warrant an award of attorneys' fees under 42 U.S.C. § 1988(b).  *Fox*, 563 U.S. at 833.

However, the Court declines to award any monetary sanction against the Plaintiffs themselves.  Doing so would violate the prohibition in Federal Rule of Civil Procedure 11(c)(5)(A) on the imposition of monetary sanctions against represented parties.  *See* FED. R. CIV. P. 11(c)(5) ("The court must not impose a monetary sanction:  (A) against a represented party for violating Rule 11(b)(2) . . . ."); *Capone v. Patchogue-Medford Union Free Sch. Dist.*, No. 04-CV-2947, 2010 WL 2771845, at *2 (E.D.N.Y. July 13, 2010) ("Of course, imposition of monetary sanctions under Section 1988 would permit [defendant] to circumvent the requirements of Rule 11.  This seems to be an unfair result.  Moreover, the extent to which Plaintiff himself was guiding this litigation remains dubious . . . .").  The Court's award of sanctions will therefore be solely as against Plaintiffs' counsel.  Defendants seek attorneys' fees and costs in the amount of $35,478.70.  *See* Defs.' Mem. II. at 14.  In support of their request, Defendants' counsel have provided contemporaneous billing records of the attorneys for whom they seek compensation, *see* Radi Decl. II, Exhibit C, as well as biographical information for these attorneys.  *See id.* ¶¶ 7-8.

It is up to this Court to exercise its discretion to tailor an "appropriate sanction."  *Cooter & Gell v. Hartmarx Corp.*, 496 US 384, 399 (1990).  "The Second Circuit has cautioned that Rule 11 sanctions should be 'made with restraint."  *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 218 (E.D.N.Y. 2011) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir.

1999)).  Even where a court determines that Rule 11(b) has been violated, the decision whether to impose sanctions "is not mandatory, but rather is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir.2004).  "Although monetary sanctions are the most common form of sanctions, a broad range of sanctions are available under Rule 11." *Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 440-4815, at *4 (E.D.N.Y. Dec. 2, 2009) (collecting cases); *see Safir v. United States Lines Inc*., 792 F.2d 19, 23 (2d Cir.1986) (affirming district court's imposition of injunction against future litigation as Rule 11 sanction); *Lipin v. Hunt*, 573 F.Supp.2d 836, 844-45 (S.D.N.Y.2008) (imposing injunction against future litigation as Rule 11 sanction); *In re Rezulin Prods. Liab. Litig.* (MDL No. 1348), No. 00 Civ. 2843, 2005 WL 626866, at *2 (S.D.N.Y. Mar.17, 2005) (issuing formal reprimand as Rule 11 sanction).  "As Rule 11(c)(2) provides, the primary principle in imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Kirschner v. Zoning Bd. of Appeals of Inc. Vil. of Valley Stream*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995) (citing Notes on Advisory Committee to Rule 11, 1993 Amendments).

"Under Rule 11(c)(2), when imposing the sanction of reasonable attorneys' fees and related expenses, the Court may impose some or all of the reasonable attorneys' fees and costs. The amount of such fees and associated disbursements is calculated under the 'lodestar' method." *Kirschner*, 159 F.R.D. at 395-96.  *See Eastway Constr. Corp. v. City of New York,* 821 F.2d 121, 123 (2d Cir. 1987) ("[A] fee substantially less than the lodestar amount is permissible."), *cert. denied*, 484 U.S. 918 (1987).   In awarding attorneys' fees and costs pursuant to Rule 11, "a district court must be mindful that '[t]he purpose of a Rule 11 award is not compensation of the victimized party but rather the deterrence of baseless filings and the

curbing of abuses.'" *Manti's Transp. v. Kenner*, No. 13-CV-6546, 2015 WL 1915004, at *14

(E.D.N.Y. Apr. 27, 2015) (quoting *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed.

App'x. 448, 452 (2d Cir. 2009)); *see Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch* v.

*Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994) ("[T]he principal objective of the imposition of

Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of

baseless filings and the curbing of abuses . . . .").   Having considered the totality of the

circumstances here, the Court finds that the improper conduct of the Law Firm of Meir Moza, by

Meir Moza, Esq., consisting of, among other things, an acute failure to conduct proper due

diligence, especially by an individual trained in the law, was not intended to injure.  However,

counsel's conduct had the effect of causing unnecessary time and expense in litigating an action

that was not warranted by the underlying facts and existing law.

Notwithstanding the documentary support for Defendants' motion, the Court does not

find an award of *full* attorneys' fees to be appropriate here.  Rather, having determined that this

action was without foundation, the Court, in its discretion awards Defendants $7,500.00 in

attorneys' fees for the Rule 11 violations on the part of Plaintiffs' counsel.[12]  This award is also

made pursuant to 42 U.S.C. § 1988(b).  The Court finds that this amount is sufficient to deter

Plaintiffs' counsel from repetition of such conduct.  This award shall be payable by Plaintiffs'

counsel within thirty (30) days of the issuance of this Memorandum and Order.

---

[12]   The Court declines to award expenses in the sum of $62.70 because Defendants have
not provided any underlying documentation supporting those expenses except for several non-
descript entries on the billing records and because the expenses as stated are *de minimis*.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Complaint is

GRANTED, and this action is DISMISSED, with prejudice. Defendants' motion for attorneys'

fees is GRANTED, in part, to the extent set forth in this Memorandum and Order.


**SO ORDERED**.

Dated: Central Islip, New York
     September 6, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge